IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JOHNNY NIXON, JR.,                          )
                                            )
        Petitioner,                         )
                                            )
v.                                          )        Case No. 1:21-cv-01135-JDB-jay
                                            )        Ref. No.  1:18-cr-10042-JDB-1
UNITED STATES OF AMERICA,                   )
                                            )
        Respondent.                         )

ORDER DENYING § 2255 MOTION, DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL IS NOT TAKEN IN GOOD FAITH, AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Before the Court is the motion of Petitioner, Johnny Nixon, Jr., to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 ("§ 2255 Motion").[1]  (Docket Entry ("D.E.") 11.)[2] The Government responded (D.E. 14) and Petitioner replied (D.E. 20).  Shortly thereafter, Nixon filed a supplement to his initial motion.  (D.E. 21.)  The Government responded (D.E. 23) and, subsequently, submitted a supplemental response (D.E. 24).  This matter, therefore, is now ripe for adjudication.  For the following reasons, Petitioner's § 2255 Motion is DENIED.

## FACTUAL BACKGROUND

On January 22, 2019, the grand jury returned an indictment against Nixon charging him with a total of ten criminal offenses.  (No. 1:18-cr-10042-JDB [hereinafter "Cr."], D.E. 47.)  In simplified form, those charges were one count of conspiracy to commit Hobbs Act robbery; three counts of Hobbs Act robbery for robbing the F & D Quick Stop, Discount Tobacco & More, and the Bell Express Truck Stop; three counts of possessing, using, carrying, and brandishing a firearm

_____

[1] Nixon is in the custody of the Federal Bureau of Prisons (No. 31305-076) at Federal Correctional Institution Butner Medium II in Butner, North Carolina.

[2] Unless otherwise indicated, all references are to case number 1:21-cv-01135-JDB-jay.

during a violent crime; and three counts of receiving and possessing a firearm while under felony indictment.  (Cr., *id.*)  Following a second superseding indictment that restated those offenses (Cr., D.E. 127), Petitioner proceeded to trial.  (Cr., D.E. 150.)  The jury convicted Nixon of six of the ten counts.  (Cr., D.E. 158.)  Specifically, the jury found Petitioner guilty of conspiracy to commit Hobbs Act robbery, Hobbs Act robbery of the Bells Express Truck Stop, using and carrying a weapon during the Hobbs Act robbery of the Truck Stop, and all three counts of receiving and possessing a firearm while under felony indictment.  (Cr., *id.*)  Thus, the jury acquitted Defendant of the robbery and firearm allegations related to the F & D Quick Stop and Discount Tobacco & More incidents.  (Cr., *id.*)  The undersigned subsequently sentenced Nixon to an effective sentence of 160 months of incarceration.  (Cr., D.E. 195.)

Petitioner appealed to the Sixth Circuit (Cr., D.E. 197) where he raised two issues: (1) the sufficiency of the evidence for his Hobbs Act robbery conviction; and (2) this Court's decision not to dismiss count 7 (use and carry of a firearm during Hobbs Act robbery) for lack of a predicate offense.  (Cr., D.E. 224.)  The Sixth Circuit rejected both.  (Cr., *id.*)  Regarding the sufficiency of the evidence, the appellate court noted that Nixon's challenge was based on the credibility of the Government's primary witness, Lacy Jeter, and questions of credibility are left to a properly instructed and informed jury.  (Cr., *id.* at PageID 1723–24.)  Because the jury knew of Jeter's potential credibility issues, it was up to the jurors to decide whether to credit her testimony.  (Cr., *id.*)  The jury apparently did so when it convicted Petitioner for robbing the Bell Express Truck Stop, and the Sixth Circuit did not disturb that finding.  (Cr., *id.*)  As to count 7, the appellate panel affirmed because both the indictment and the jury instructions made clear to the jury that it was required to find Petitioner guilty of the predicate offense of Hobbs Act robbery in order to also convict him for carrying and using a firearm during a crime of violence.  (Cr., *id.* at PageID 1725–

26.)  Therefore, the Sixth Circuit concluded that Nixon's arguments were without merit and affirmed on September 28, 2020.  (Cr., *id.*)

Petitioner, proceeding pro se, sought collateral review by filing the instant § 2255 Motion on September 17, 2021 (D.E. 1), which he followed with an amended motion on April 4, 2022 (D.E. 11) and another supplemental motion on October 3, 2022 (D.E. 21).

## LEGAL STANDARDS

I.    <u>Section 2255</u>

To state a cognizable § 2255 claim, a petitioner must allege: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). An error of constitutional magnitude is one "which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  If a § 2255 motion presents a factual dispute, the court must hold an evidentiary hearing to ascertain the truth, but no such hearing is necessary where the movant's allegations "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *See Oliver v. United States*, 2:15-cv-02326-SHM-tmp, 2018 WL 11476050, at * 3 (W.D. Tenn. June 19, 2018) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).  The petitioner bears "the burden of proving that he is entitled to relief by a preponderance of the evidence."  *Id.* (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)).

II.   Procedural Default

A § 2255 motion is not a substitute for direct appeal nor is it a "do over" for an unsuccessful appeal.  *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) ("It is well-established that a § 2255 motion 'is not a substitute for a direct appeal.'") (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (quoting *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995)).  As such, a petitioner is presumptively barred by a doctrine known as procedural default from pursuing collateral relief based on an argument that he could have pursued on direct appeal but did not.  *See Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022) (citing *Coleman v. Thompson*, 501 U.S. 722, 747 (1991)); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review . . . .")  That rule, however, is not absolute. *Vanwinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

A litigant may raise a procedurally defaulted claim where he can demonstrate either (1) cause and actual prejudice or (2) actual innocence.  *Id.* (quoting *Bousley*, 523 U.S. at 622).  In this context, "actual innocence means factual innocence, not merely legal insufficiency."  *Id.* (internal quotation marks omitted) (quoting *Bousley*, 523 U.S. at 623).  Meanwhile, cause and prejudice demands that a prisoner "offer[] a sufficient excuse for their failure to timely raise a claim (showing 'cause') and explaining why they would be harmed if they could not belatedly assert it (showing 'prejudice')."  *Wallace*, 43 F.4th at 602 (citing *Gatewood v. United States*, 979 F.3d 391, 394 (6th Cir. 2020)).

## LAW & ANALYSIS

In total, Nixon raises twelve claims for relief.  (D.E. 11 & 21.)  Those contentions are outlined and renumbered here for ease of reference:

Claim I:        Prosecutorial misconduct for failing to disclose a cooperation agreement with co-defendant Cordarious Baltimore;

Claim II:       Prosecutorial misconduct for using Baltimore and a cellmate to try to procure incriminating statements from Nixon after the right to counsel had attached;

Claim III:      Ineffective assistance of counsel for failing to investigate the Government's coaching of Lacey Jeter to give untruthful testimony;

Claim IV:       Ineffective assistance of counsel for failing to challenge Lacey Jeter's credibility;

Claim V:        Ineffective assistance of counsel for failing to identify and object prior to entry of judgment that Count 7 on the jury verdict was not returned guilty;

Claim VI:       Ineffective assistance of counsel for failing to object to the Government grouping convicted counts and acquitted counts under § 3D1.1 of the United States Sentencing Guidelines ("Guidelines");

Claim VII:      Prosecutorial misconduct for the Government improperly double counting under the Guidelines by grouping Counts 1 and 6 with acquitted conduct;

Claim VIII:     Ineffective assistance of counsel for failing to object to the enhancement in Nixon's criminal offense category through the use of acquitted conduct;

Claim IX:       Ineffective assistance of counsel for failing to object to the Court not allowing Defendant a chance to speak at sentencing;

Claim X:        Petitioner's Hobbs Act robbery is inconsistent with *United States v. Taylor*, 596 U.S. 845 (2022);

Claim XI:       The Government failed to prove that he, as an aider and abettor to a § 924(c) offense, knew one of his conspirators would use a firearm during Hobbs Act robbery; and

Claim XII:   The prohibition against him receiving a firearm while under felony indictment pursuant to § 922(n) is unconstitutional under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

The Government responds that none of these allegations, including those that it asserts Nixon has procedurally defaulted, merit relief. (D.E. 14, 23, & 24.) As discussed in detail below, Respondent is correct and Petitioner's § 2255 Motion is denied.

## I.   <u>**Claim I**</u>

Nixon first contends that the Government had a cooperation agreement with Baltimore but failed to disclose it. (D.E. 11 at PageID 39–40.) In support of this allegation, Nixon avers that jail authorities moved Baltimore into his cell in March or April 2019 and Baltimore tried to engage with Nixon about their case, including making untrue statements about their alleged crimes and trying to get Nixon to agree. (*Id.* at PageID 39.) Then, on the third day of Petitioner's trial, Baltimore was placed in the cell next to Nixon and Baltimore admitted that the United States Marshals had wanted him moved close to Petitioner. (*Id.*) Finally, when Nixon asked Baltimore if he was cooperating with the United States, Baltimore said "no" but, according to Petitioner, "acted peculiar." (*Id.*) Thus, Nixon maintains that the Government had a cooperation agreement with Baltimore but failed to disclose it, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). (*Id.* at PageID 40.)

The Government responds that Petitioner has procedurally defaulted this claim because he did not raise it on direct appeal and, even if he had not defaulted, Nixon's conclusory postulations do not warrant relief. (D.E. 14 at PageID 71.) Furthermore, though not in direct response to this § 2255 Motion, the Government has acknowledged in pleadings submitted to this Court that it did not possess a cooperation agreement with Baltimore. (D.E. 19.)

Nixon replies that the Government's response makes it "an evident truth" that Baltimore had a cooperation agreement that was not disclosed. (D.E. 20 at PageID 91.) To overcome procedural default, Petitioner noted that his counsel—*if he knew about the agreement*—was ineffective; if counsel did not know about the agreement, the Government concealed it. (*Id.*) Furthermore, Nixon maintains that he had no evidence of the cooperation agreement sufficient to raise it on direct appeal. (*Id.* at PageID 92.) Lastly, Petitioner avers that this is a "true *Brady* violation" and that necessarily is sufficient to show "cause and prejudice." (*Id.* (internal quotation marks omitted) (quoting *Apanovitch v. Houk*, 466 F.3d 460, 473–74 (6th Cir. 2006)).)

Here, Nixon has procedurally defaulted this *Brady* claim and, thus, this Court will not consider it. Each of the alleged facts giving rise to the (conclusory) inference that Baltimore had a cooperation agreement with the Government occurred before or during Petitioner's trial. (D.E. 11 at PageID 39.) Necessarily, that means that Nixon was aware of these facts prior to his appeal and could have raised them to the appellate court but did not. (*Id.*) Although he correctly points out that "a true *Brady* violation" satisfies the cause and prejudice exception, *Apanovitch*, 466 F.3d at 473–74, that general rule does not apply where the purported *Brady* violation was known to Petitioner before the direct appeal. *See United States v. Cooper*, No. 5:20-CV-87-KKC, 2020 WL 9550222, at *4 (E.D. Ky. Aug. 31, 2020), *report and recommendation adopted by* 2021 WL 1592662. That was the case here (D.E. 11 at PageID 39); accordingly, Nixon's first claim was procedurally defaulted. *See Massaro*, 538 U.S. at 504. Furthermore, even if the Government withheld a cooperation agreement with Baltimore, Nixon suffered no prejudice because Baltimore never testified against him. (Cr., D.E. 204–07.) For those reasons, as well as because the Government has indicated it does not possess such an agreement (D.E. 19), Petitioner's first claim is denied.

II.    **Claim II**

Nixon next asserts that the Government improperly tried to use Baltimore and another cellmate, known only to him as "Eddie," as an informant to procure incriminating statements from Petitioner after the right to counsel had attached.  (D.E. 11 at PageID 41–42; D.E. 11-1.)  Nixon states that he knew this information before his trial and that Eddie refused to cooperate with the Government.  (D.E. 11-1.)  A review of the trial transcript also indicates that the United States did not call anyone with the first name Eddie (nor Baltimore) as a witness against Petitioner.  (Cr., D.E. 204–07; D.E. 14 at PageID 72.)

Here, even accepting Nixon's version of events as true for purposes of this motion, he suffered no prejudice from this interaction between Eddie and the Government because, by his own admission, Eddie "refused to cooperate."  (D.E. 11-1.)  The same is true for Baltimore because he also did not testify against Nixon.  (Cr., D.E. 204–07.)  Accordingly, Petitioner did not suffer any prejudice and, thus, he has not alleged an error of constitutional magnitude.

III.    **Claim III**

Nixon next maintains that his counsel was ineffective for neglecting to investigate the Government's coaching of Jeter's testimony.  (D.E. 11 at PageID 42.)  Specifically, he highlights that when a representative of the United States asked Jeter why she was at his trial, she responded, "to say what you told me to say."  (*Id.*)  Furthermore, Jeter provided false testimony about "events that she was not present for."  (*Id.*)  Thus, "[h]ad counsel made the most minute attempt to investigate this response, it is very likely that this coaching would have come to light."  (*Id.*)  The Government responds that Jeter never made the statement Nixon attributes to her.  (D.E. 14 at PageID 72–73.)  Instead, the United States notes that the only testimony that comes close to what Nixon recalls was when Jeter acknowledged that a clause of her plea agreement "mean[t] that I

come in here and ya'll [sic] see that I'm lying, and what I say does not match with what you said, that the plea agreement is off the table."  (*Id.* (quoting D.E. 206 at PageID 1516–17).)

A review of the trial transcript indicates that Jeter never uttered the statement Nixon purports to quote.  (Cr., D.E. 205 at PageID 1346–1425; Cr., D.E. 206 at PageID 1471–1519.) Instead, the record reflects the following testimony from the witness upon questioning by a representative of the United States:

> Q.     As part of [your] plea agreement, your lawyer went through the plea agreement with you?
>
> A.     Yes, ma'am, she did.
>
> Q.     Okay.  There is a section regarding acceptance of responsibility.  Did she explain that?
>
> A.     Yes, ma'am, she did.
>
> Q.     What is your understanding of the acceptance of responsibility?
>
> A.     Accepting that actions of what they had charged me with and pleading guilty to those, because those are the crimes I committed.
>
> Q.     Okay.  And you get credit for that.  Is that correct?
>
> A.     Yes, ma'am.
>
> Q.     Off your sentence?
>
> A.     Yes, ma'am.
>
> Q.     As part of that, did she understand [sic] to you that you had to be honest with the Court?
>
> A.     Yes, ma'am, she did.
>
> Q.     Okay.  And you're here to be honest with the Court today?
>
> A.     Yes, ma'am.

(Cr., D.E. 205 at PageID 1348–49.)  Jeter then engaged in another exchange with the Government:

Q.      Okay.  Did she talk to you about the fact that the things you told the government couldn't be used against you in that agreement?

A.      Yes.

Q.      Did she explain to you that a condition of that was that you had to be completely honest and truthful?

A.      Yes, ma'am.

Q.      And if the things that you said were not honest and truthful, they could be used against you?

A.      Yes.

Q.      Okay.  And you're here today to be honest and truthful with the Court and this jury?

A.      Yes, ma'am.

(Cr., D.E. at PageID 1351.)  Finally, on re-direct examination, Jeter said the following when asked about her requirements under her plea agreement:

Q.      What does that means [sic] to you?

A.      It means that I come in here and y'all see that I'm lying, and what I say does not match with what you said, that the plea agreement is off the table.

. . .

Q.      What happens if you were to come in here and lie on the stand?

A.      Then everything that I've done that I've worked to gain is just, is just out the window.

(Cr., D.E. 206 at PageID 1517–18.)  Contrary to Nixon's assertion (D.E. 11 at PageID 42), these statements do not indicate that Jeter was being coached to tell a story other than the truth (Cr., D.E. 205 at PageID 1348–49, 1351; C.R., D.E. 206 at PageID 1517–18).  On numerous occasions, in fact, she stated that she was telling the truth and being honest.  (*Id.*)  All the discussion about her plea agreement with the Government suggests is that if she was not to tell the truth, the United

States would be relieved of its obligations under the agreement. (*Id.*) That is not the same as stating that if she does not recite a version of events as provided to her by the Government that she will not receive a sentence reduction. (*Cf.* D.E. 11 at PageID 42.) Nothing in the transcript demonstrates that Jeter understood that she was required to offer a version of events fabricated by the United States. (Cr., D.E. 205 at PageID 1346–1425; Cr., D.E. 206 at PageID 1471–1519.) Nixon's counsel was not ineffective, as such, for failing to investigate that possibility further. (D.E. 11 at PageID 42.) Thus, Petitioner's third claim is rejected.

## IV.   **Claim IV**

Nixon next argues that his counsel was ineffective for failing to adequately challenge Jeter's credibility when she admitted that she would "say what [the Government] told [her] to say." (*Id.*) This contention is based on the same (erroneous) purported quote and grounds as Claim III above; therefore, for the reasons identified in Claim III, this allegation is denied.

## V.   **Claim V**

The Inmate next avers that the jury did not find him guilty of count 7 of the indictment beyond a reasonable doubt because the verdict form was "irreconcilably inconsistent." (D.E. 11 at PageID 43.) Count 7 of the second superseding indictment charged that Nixon, and his co-defendants:

> [A]ided and abetted, each other, during and in relation to a crime of violence, specifically interference with commerce by threats or violence involving the Bells Express Truck Stop . . . in violation of Title 18 United States Code, Section 1951, specifically Count 6 of the Superseding Indictment, which Count is realleged and incorporated by reference herein, did knowingly possess, use, carry and brandish a firearm, in violation of 18 U.S.C. §§ 2 and 924(c).

(Cr., D.E. 127 at PageID 287–88.) Count 6, to which Count 7 referred, charged Petitioner with Hobbs Act robbery of the Bells Express Truck Stop. (Cr., D.E. 127 at PageID 287.) The verdict form with which Nixon quarrels stated the following:

11

7.  We find that the Defendant, Johnny Lee Nixon, Jr., **as to Count 7:**



(Guilty)           or           (Not Guilty)

7a.  If you find the Defendant not guilty of Question 7, go to Question 8.  If you find the Defendant guilty of Question 7, answer the following.  Did the government prove beyond a reasonable doubt that the Defendant brandished a gun in the course of this crime?



(Yes)           or           (No)

(Cr., D.E. 158 at PageID 551.)

The fundamental problem with the Inmate's argument is that questions 7 and 7a are asking the jury to determine two separate issues.  Question 7 relates to whether a defendant "uses," "carries," or "possesses" a firearm during a crime of violence, which carries a mandatory minimum sentence of "not less than 5 years."  18 U.S.C. § 924(c)(1)(A)(i).  Meanwhile, question 7a relates to whether a defendant "brandished" the firearm, which raises the mandatory minimum sentence to "not less than 7 years."  § 924(c)(1)(A)(ii).  Thus, it is not inconsistent at all for a jury to find that a defendant—such as Nixon—used, carried, or possessed a firearm during a Hobbs Act robbery but did not brandish that weapon.  The statute explicitly allows for this sort of determination by delineating different mandatory minimums for those actions.  *Id.*  As such, the jury properly found Petitioner guilty of Count 7 as it related to carrying, using, or possessing a firearm, and he was sentenced according to that verdict—i.e., 60 months (5 years) for a violation

of § 924(c)(1)(A)(i) but not 84 months (7 years) for a violation of § 924(c)(1)(A)(ii).  (Cr., D.E. 194 at PageID 994.)  His counsel was not ineffective for failing to object to the verdict because it was not objectionable.  The Inmate's fifth claim is denied.

VI.   **Claim VI**

Nixon's next assertion is that his counsel was ineffective for failing to object to the grouping of convicted and non-convicted counts under section 3D1.1 of the Guidelines.  (D.E. 11 at PageID 45–46.)  Without addressing the merits of this claim, as Respondent points out (D.E. 14 at PageID 76), Petitioner's allegation must be dismissed because it is not cognizable on collateral review.  *See, e.g.*, *Bullard v. United States*, 937 F.3d 654, 660 (6th Cir. 2019) (quoting *Snider v. United States*, 908 F.3d 183, 191 (6th Cir. 2018)).  The Sixth Circuit has repeatedly acknowledged that a defendant may not raise a challenge to the application of the advisory Guidelines on collateral review.  *Id.* (quoting *Snider*, 908 F.3d at 191).  This is because the Guidelines are only advisory and are not binding on the sentencing court, so any deviation or misapplication of those Guidelines, by itself, is not an error of constitutional magnitude so long as the sentence is otherwise consistent with law.  *See id.* at 659–60.  That is what Nixon attempts to do here; therefore, this claim is rejected.

VII.  **Claim VII**

The Inmate next contends that his acquitted conduct was double counted through grouping under section 2B3.1(b)(2)(B) of the Guidelines.  (D.E. 11 at PageID 46–47.)  Because this contention is also based on the application of the advisory Guidelines, it is not cognizable and is dismissed.  *See Bullard*, 937 F.3d at 660 (quoting *Snider*, 908 F.3d at 191).

VIII.   **Claim VII**

Petitioner next argues that his counsel was ineffective for not objecting to the use of acquitted conduct in enhancing his sentence under the Guidelines.  (D.E. 11 at PageID 47–49.) Again, this contention is based on the application of the advisory Guidelines, it is thus not cognizable and is denied.  *See Bullard*, 937 F.3d at 660 (quoting *Snider*, 908 F.3d at 191).

IX.   **Claim IX**

The Inmate next challenges his counsel's failure to object to the Court not allowing him to speak at his sentencing hearing.  (D.E. 11 at PageID 49–50.)  This claim is meritless as the transcript of Nixon's sentencing establishes that the Court allowed him to speak, and he in fact did speak on his own behalf.  (Cr., D.E. 299 at PageID 2141–42.)  The Court engaged in the following exchange, reprinted here verbatim, with Petitioner at his sentencing:

| | |
|---|---|
| THE COURT: | Okay.  All right.  Mr. Nixon, the Court will permit you to say anything you wish to on your own behalf before I impose sentence, if you care to do so.  You're not required to do that.  But if you wish to say anything, you may come up here to the podium for that purpose, sir.  Yes, sir. |
| THE DEFENDANT: | I want to say that I have made mistakes.  And today I am being punished for crimes I did not commit.  I am – I have did thing[s] in the past, but this just isn't one of them. |
| THE COURT: | Okay.  Did you have a chance to receive and review [a] copy of the presentence report and discuss that with Mr. Leffler? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Is there anything else you wish to add or comment on that has not been already addressed? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Okay.  All right.  You can have a seat back over there. |

(Cr., *id.*)  Accordingly, Nixon was afforded an opportunity to speak at his sentencing, and he did so (Cr., *id.*); thus, his counsel was not ineffective for failing to object to the Court not permitting him to speak (D.E. 11 at PageID 49–50).  The Inmate's ninth claim, consequently, is rejected.

X.    **Claim X**

Nixon next maintains that his conviction for aiding and abetting Hobbs Act robbery is invalid following the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). (D.E. 21.)  The Government responds that *Taylor* dealt only with attempted Hobbs Act robbery, not aiding and abetting that act, which may be considered the same as acting as the principal.  (D.E. 23 at PageID 110–11.)  Furthermore, the United States highlights that "the Sixth Circuit, and every court of appeals that has considered the issue, has held that a completed Hobbs Act robbery is categorically a 'crime of violence.'"  (*Id.* at PageID 110 (quoting *United States v. Richardson*, 948 F.3d 733, 742 (6th Cir. 2020)).)  The Government adds that "district courts considering the issue post-*Taylor* have held that aiding and abetting Hobbs Act robbery is a crime of violence even after *Taylor*."  (*Id.* at PageID 111 (citations omitted).)  The position of the United States is correct.

The Supreme Court's decision in *Taylor* held that attempting to commit Hobbs Act robbery is not a crime of violence.  *Taylor*, 596 U.S. at 851.  The Court reached that conclusion because attempted Hobbs Act robbery does not require the prosecution "to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property."  *Id.*  The Court said nothing of aiding and abetting Hobbs Act robbery, *id.*, and the Government is correct that the Sixth Circuit has determined that aiding and abetting Hobbs Act robbery is a crime of violence.  *See Richardson*, 948 F.3d at 741–42.  The Sixth Circuit has also made clear that "[t]here is no distinction between aiding and abetting the commission of a crime and committing the principal offense."  *Id.*

Therefore, unlike attempted Hobbs Act robbery, which does not require the use or threatened use of force, *Taylor*, 596 U.S. at 851, aiding and abetting Hobbs Act robbery is the same as the principal offense, which is a crime of violence. *Richardson*, 948 F.3d at 741–42. Although *Taylor* followed *Richardson*, nothing in *Taylor* disturbs the Sixth Circuit's original conclusion, and the reasoning underlying *Taylor* does not suggest that *Richardson* was wrongly decided. *See Taylor*, 596 U.S. at 850–52. Consequently, the Inmate's assertion that his conviction for aiding and abetting Hobbs Act robbery is unlawful (D.E. 21) is without merit and is denied.

XI.   **Claim XI**

The Inmate next argues that there was not sufficient evidence to justify his conviction for using, carrying, or possessing a firearm during the commission of a crime of violence under 18 U.S.C. § 924(c) because the Government did not prove that he was aware of the firearm. (D.E. 21.) The United States responds that Nixon procedurally defaulted this claim by not raising it on direct appeal despite having knowledge of it. (D.E. 23 at PageID 111–13.)

Given that he was at his trial and heard the evidence presented against him, Nixon was aware of this alleged defect prior to his direct appeal.[3] *See Wallace*, 43 F.4th at 602. He may not raise it on collateral review, therefore, absent a showing of cause and prejudice or actual innocence. *Vanwinkle*, 645 F.3d at 369 (quoting *Bousley*, 523 U.S. at 622). He has pleaded neither. (D.E. 21.) Thus, this claim is procedurally defaulted and denied.

---

[3] To the extent that Nixon attempts to relitigate the sufficiency of the evidence claim that he raised on direct appeal (Cr., D.E. 224), he is barred from raising that issue again absent an intervening change in the law. *See Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("It is equally well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.") (first citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); and then citing *Davis v. United States*, 417 U.S. 333, 345 (1974)). He has not pleaded an intervening change in the law. (D.E. 21.)

XII.   **Claim XII**

Lastly, relying on *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), Petitioner contends that his convictions for violating 18 U.S.C. § 922(n) are unconstitutional under the Second Amendment.  (D.E. 21.)  The Government submitted a two-pronged response: (1) this claim is untimely and procedurally defaulted (D.E. 24), and (2) § 922(n) is not unconstitutional under *Bruen* (D.E. 23 at PageID 113–26).

    *a.  Procedural Arguments*

The United States submits that Nixon's claim is time-barred because he did not raise it within one year of the date after which he could have submitted a petition for a writ of certiorari to the Supreme Court, which was February 25, 2021.  (D.E. 24.)  Petitioner filed his initial § 2255 Motion on September 17, 2021.  (D.E. 1.)  The Supreme Court rendered its decision in *Bruen* on June 23, 2022, and Nixon raised his *Bruen* challenge on October 3, 2022.  (D.E. 21.)  The Government submits that the *Bruen* argument did not relate back to the initial § 2255 Motion such that it should be deemed filed on the earlier date.  (D.E. 24 at PageID 228–29.)  Likewise, the United States contends that *Bruen* did not create a new right but reconfigured the test to be applied to Second Amendment challenges.  (*Id.*)  Similarly, Respondent notes that the Inmate could have raised a Second Amendment argument on direct appeal.  (*Id.* at PageID 230–32.)  Of course, it would have been considered under a prior standard, but that did not prohibit such a challenge.  (*Id.*)  Thus, the failure to raise that claim means it is procedurally defaulted.  (*Id.*)

Nixon likely can show cause and prejudice to overcome procedural barriers to his § 2255 Motion.  *Vanwinkle*, 645 F.3d at 369 (quoting *Bousley*, 523 U.S. at 622).  Viewing the matter in a light favorable to him, the Inmate could not have known the contours or reach of *Bruen* before it was issued and, if it could result in the invalidation of his conviction, he is prejudiced by procedural

default.  *Id.*  The prudent path, thus, is to consider his argument on their merits.  Regardless, *Bruen* does not afford Nixon relief.

b.  ***Merits***

As a preliminary matter, it is not clear whether Petitioner tenders a facial or an as-applied constitutional challenge to § 922(n).  Consistent with the obligation to read pro se pleadings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), the Court assumes that the Inmate alleged both types of challenges.  Either way, the statute is not unconstitutional.

The Second Amendment declares that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In 2008, the United States Supreme Court proclaimed that this provision safeguards the "individual right to keep and bear arms" for "law-abiding citizens."  *See District of Columbia v. Heller*, 554 U.S. 570, 595, 625 (2008).  Revising the standard that courts had been applying to Second Amendment challenges, the Supreme Court stated in *Bruen*:

> [T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022) (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).  Based on the submissions of the parties and the Court's review of the law, it appears that no binding, analogous decision controls this question.  (D.E. 21, 23, 24.)  Thus, guided by persuasive precedent, the undersigned engages in a *Bruen* analysis.

1. **Nixon's Conduct is Covered by the Plain Text of the Second Amendment**

Unlike convicted felons, who this Court and many others have found are not part of "the People" under the guardianship of the Second Amendment, *see, e.g.*, *United States v. McNeal*, No. 1:22-cr-10009-JDB-1 (W.D. Tenn. Dec. 15, 2023), D.E. 48, those under felony indictment are presumed innocent of their crimes. Thus, those under indictment for a felony are part of "the People" contemplated by the Second Amendment. *See, e.g.*, *Alexander v. United States*, 686 F. Supp. 3d 608, 618–19 (W.D. Mich. 2023). Likewise, the receipt of weapons, which is the conduct at issue here regardless of the indictment status of the recipient, is covered by the Constitution. *Id.* at 619. If the possession of weapons by law-abiding citizens is protected, so too must the receipt of those weapons because, as other courts have recognized and common sense dictates, one cannot possess a firearm without having first received it. *Id.* Therefore, Nixon is one of "the People" contemplated by the Second Amendment and his conduct is also covered by it.

2. **Title 18 U.S.C. § 922(n) is Consistent with the Nation's Historical Tradition of Firearm Regulation**

Nevertheless, a prohibition on individuals under felony indictment receiving firearms is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24 (quoting *Konigsberg*, 366 U.S. at 50 n.10). As some of this Court's sister districts have persuasively concluded, surety laws are appropriate historical analogues to § 922(n) to demonstrate that it is not unconstitutional. *See, e.g.*, *Alexander*, 686 F. Supp. 3d at 622–23; *United States v. Brown*, No. 5:23-cr-12-CAR-CHW, 2024 WL 1773991, at * 5 (M.D. Ga. Apr. 24, 2024).

Surety laws, which derive from England and were adopted by ten jurisdictions in the United States from 1838 to 1871 (which themselves mirrored prior American colonial laws), required certain individuals who were viewed as posing a threat to public safety to post a bond before carrying a weapon. *Brown*, 2024 WL 1773991, at *4 (citing *Bruen*, 597 U.S. at 55–56). Surety

laws show "that government officials in the founding era could legally restrict a person's right to keep and bear arms on the basis of an accusation of actual or threatened criminal conduct." *Id.* (citing *United States v. Baker*, No. CR-23-130-G, 2024 WL 24088, at *5 (W.D. Okla. Jan. 2, 2024). Therefore, relying on the persuasive analyses conducted by some of this Court's sister districts regarding surety laws, the undersigned finds that § 922(n) is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24 (quoting *Konigsberg*, 366 U.S. at 50 n.10). That is true whether viewed on its face or as applied to Nixon, an individual who was accused of violent crimes—i.e., aggravated robbery and aggravated assault—and who could have been deemed a threat to public safety based on that accusation. *Cf. Alexander*, 686 F. Supp. 3d at 624 (denying an as-applied challenge to § 922(n) where the defendant was under indictment for the offense of "dangerous weapon—miscellaneous" because that was "conduct implicating public safety.") The Inmate's *Bruen* claim is denied.

## CONCLUSION

For the foregoing reasons, Nixon's § 2255 Motion is DENIED.

## APPELLATE ISSUES

A § 2255 petitioner may not proceed on appeal unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the § 2255 Motion.  Because any appeal by Nixon does not deserve attention, the Court DENIES a certificate of appealability.

A habeas petitioner seeking to appeal must pay the $605 filing fee required by 28 U.S.C. §§ 1913 and 1917.  Under Rule 24(a)(1) of the Federal Rules of Appellate Procedure, a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the petitioner must move to proceed in forma pauperis in the appellate court.  *See* Fed. R. App. P. 24(a)(4)-(5).

For the same reason it denies a COA, the Court finds that any appeal would not be taken in good faith.  The Court therefore CERTIFIES under Rule 24(a) that any appeal would not be taken in good faith and DENIES Nixon leave to appeal in forma pauperis.

IT IS SO ORDERED this 7th day of August 2024.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE